Good morning. May it please the Court, Sung Park for the petitioner Epifanio Teo Pinto. I believe this is a jurisdictional issue that we've come here today to discuss. The government contends that the petitioner is seeking review and voluntary departure simultaneously. Just to inform the Court, my client is presently before the Immigration Court. His court date is coming up on October 21, 2010, for his status. And the judge is right now concerned whether she should entertain a new relief, such as cancellation of removal. Now, the petitioner did file cancellation of removal and asylum when he was before the Immigration Court prior to the petition for review. The cancellation of removal was pre-terminated because he did not have any qualifying relatives. Therefore, he proceeded with political asylum, which is granted. Now, under Castrejon and Garcia, I believe the case is very similar in the fact that the immigration judge granted asylum. Board of Immigration sustained government's appeal, thereby reversing the immigration judge's grant. And then a petition for review was followed thereafter. What's similar is both cases were remanded to the Immigration Court for the purpose of a voluntary departure issue. And I believe that's the contention, what is a final decision or a final removal order. And I believe once the BIA decision is rendered regarding the main relief, which in this case is political asylum, there is no other issues except for voluntary departure, which is a very discretionary relief in nature. So the immigration judge would most likely grant the case. And, of course, in Castrejon, the justices also believed that this why would the Respondent appeal a voluntary departure that would have been granted. Therefore, we have always been how is this other issue? Excuse me. How is this other issue before the Immigration Court besides voluntary departure?  That relief requires 10 years physical presence, which he has, good moral character. He's just less than a year. But that was how did the how does the IJ have is that a new action that you requested? It's not part of the remand from the BIA on the voluntary departure. That is correct. It is not part of the remand. The petitioner actually became a father in less than a year. So the qualified relative just came in. And so, therefore, we're asking the judge to consider a new relief, which is cancellation at this time. And so the judge is trying to see whether she has authority to look at this new relief or whether she should just decide on voluntary departure as directed by the Board of Immigration Appeals. That issue, as far as I can tell, is improperly before us if it's not part of the voluntary departure issue. Right. That's a separate issue. Let's suppose I'm just trying to understand what you think should happen. If we agree that your petition to us is timely under Castrillon from a final order, then the other proceeding for the IJ will do what in the meanwhile? She'll go ahead and have her hearing or what? No, Your Honor. What we would right now, the reason why the immigration judge for the last four years didn't do anything but continue this case was they were looking to the Ninth Circuit for a decision on the asylum merits itself. Okay. So if the asylum merits was reversed, is reversed, and his political assignment is granted, just like in Castrillon where the Ninth Circuit reversed and granted his residency, then that would be new. Right. And the judge would say, you know what, he's already in the process. I'll just terminate the case. Okay. Yes. Okay. So suppose then that we were to conclude and accept the argument that it's premature because in light of the Dada and all of that, we should now revisit Castrillon, then what? In other words, if this appeal is not timely, it's premature, then it sounds like the IJ is not going to rule either under those circumstances either. Right. And then... So basically whatever we do here today, you're just telling us that there's also something going on before the IJ and nothing we do here is going to affect it. It's up to the IJ whether she wants to proceed or not without a decision from us one way or the other. Yes. Okay. Yes. But what she's going to do is a merits-based decision, though. You're asking for some affirmative relief at that level right now. While we're here deciding this issue, you're down there asking for affirmative relief. Your Honor, that's more of a so-called the backup plan, just in case the asylum merits is... Well, backup or not, cancellation of removal is beneficial to your client, isn't it? If it's granted. But the merits of the case is not very strong. I'm telling you straight out, the merits of the case is not very strong. It's a newborn child, a healthy newborn child, and according to case law and the previous cases, most likely it would get denied, and then we would go through the whole process of appealing it, going to the Board of Immigration Appeals, and we would be in the same position. It's a separate proceeding. It's a separate proceeding, and therefore, again, this case, Your Honor, is more on the political asylum. When you say a separate proceeding, would you mean that you may try and wrap it into your hearing on voluntary departure schedule for October 21st? Yes. We would request, well, we would request that the cancellation removal application be reinstated since it was pre-terminated. Okay. So is this, are you at, is this, is it filed on a motion to reopen, or is it something, something like that? It's not a motion, there's no motion to reopen. There's no... It's not a motion to reopen the docket or something. That's another issue, whether the judge has to receive a motion to reopen based on a new issue. And we're, we're basically claiming since it's already before the, before the immigration judge to also include it as part of the voluntary departure. Now, if, if this Court believes that the jurisdiction is, yes, Your Honor? I think we ought not to use up your argument time trying to sort our way through this new development, this new information. Yes, sir. So why don't you use your time now to argue the merits, and we'll hear from the government if they have some insights, and then if we need additional briefing or whatever. But we're not going to resolve. So when you're asking about the merits, are you talking about the merits of the asylum case, or are we away from the jurisdictional issue now, Your Honor? Why don't you, if you think what you've just raised with us relates to the jurisdictional issue, tell us how it relates. Your Honor, first of all. Or tell us what you want to say about the jurisdictional issue, although I think we understand the, the choices we have to. The jurisdictional, if, if this Court is inclined to say this is, it was premature, I would request that you stay, stay the decision until there's some decision made at the immigration court level regarding the cancellation and or voluntary departure. That way we can consolidate instead of, instead of dismissing this case and then going back, filing for cancellation and then filing for BIA appeal. If it gets denied, again, filing for a petition for review and then consolidating the two. That's another option. But again, if you're looking at judicial economy, that we would be revisiting another case again, which is before this Court already, the asylum issue. Although it might be in your client's interest in staying in the United States to have us just dismiss this outright and then start the whole process all over again. That's true, too. Yes, Your Honor. That, if we're looking at him just to remain in the United States while his case is proceeding. But I would, again, put forth to the Court that the main issue before the, before the Ninth Circuit is, is asylum. And the jurisdiction, I believe, is within the Court, especially within light of Castodejo. I believe when they're talking about DADA and regarding voluntary departure that needs to be final immigration judge's order, the reasoning behind that is, I would say, tenuous because, especially in light of unlawful presence doctrine that came up in 1997 under the IHRA-IHRA, which was created in 1996 but in effect came in April 1st, 1997. That, in effect, basically states if you leave under voluntary departure or removal and you've accrued one year illegal residence, illegal residency in the United States, you're barred for ten years. That's the same effect as a voluntary departure. So when they're saying when they're in DADA where there's a quid pro quo, they're actually receiving a benefit under voluntary departure, that's not true, Your Honor. It's the same effect. Voluntary departure is tantamount to deportation. I'll give you a bit of time on rebuttal to respond to the government. Good morning, Your Honors. May it please the Court, Dallin Holder, trial attorney with the U.S. Department of Justice for the Attorney General. This case lies at the confluence of several developments that have dramatically changed the legal landscape since this Court decided to catch Trajan-Garcia. Congress enacted immigration reforms in 1996. This dramatically altered the voluntary departure statute, imposing time limits for the first time. This later led to the Supreme Court's decision in DADA finding those time limits mandatory and foreseeing the new voluntary departure regulations, which now make it clear that voluntary departure cannot coexist with a petition for review. Finally, this Court issued a decision in Fernandez defining the scope of the agency remand. All this makes clear that given the procedural posture of this case, this Court should revisit catch Trajan-Garcia and decide to exercise jurisdiction or decline to exercise jurisdiction where proceedings are ongoing, including the voluntary departure proceedings, and there is no executable final order of removal. I'm happy to answer questions. Counsel, you cited to us the Hakeem decision from the First Circuit. That's correct, Your Honor. The 2010 decision in which they effectively granted the relief that you're asking us to grant. The difference, as I read Hakeem, the difference between Hakeem and this case is in Hakeem, the BIA decision was in April of 2009, which was after the effective date of the new regulation. The BIA's decision in this case was in 2006, which was three years before the new regulation. Why should we dismiss this for lack of jurisdiction based on a regulation that was enacted three years after the BIA's decision? Well, Your Honor, the problem is the voluntary departure in this case is still subject to the new regulation. Because voluntary departure was never determined by EOIR, by the immigration judge, and there's no final order of removal in this case, he still would be subject to the voluntary departure regulations. Those regulations provide that if he files a petition for review, after having been granted voluntary departure under those regulations, it automatically terminates his voluntary departure. So that actually brings up a point with what Petitioner's Counsel just mentioned about whether the court could stay this decision and then later let him consolidate the cases. That would be impossible for him to continue to maintain his voluntary departure. If this court responded quickly and issued a decision before the voluntary departure was decided with the regulation, would that move his hearing on the 21st of October? I think it very well could decide the issue of voluntary departure, but at least the government's position in this case is this court's decision in Fernandez basically allows the immigration judge to consider additional issues on remand. Our position, which we took in our 28J, which we have vetted through the Office of Immigration Litigation, is that when the board doesn't retain jurisdiction, even when it remands, saying, look, we're remanding for voluntary departure, but when it doesn't specifically maintain jurisdiction, then the immigration judge's scope of remand isn't limited. So in this case, as was pointed out, and as Petitioner's Counsel has pointed out, he's going to raise a cancellation of removal application on remand to the immigration judge. From our perspective, that's allowed underneath this court's precedent in Fernandez. I'm still trying to understand. The facts in the Castrillon were the same as here. That is, there was a VIA decision, a remand for voluntary departure. The petition for hearing in our court was filed before the voluntary departure was decided, and construing the statute, we concluded that there was a final order, construing what the scope of voluntary departure was. Now, what has changed about voluntary departure since Castrillon to modify the statute, which is what we're construing, which is what's the final order? Well, Your Honor, Castrillon was decided in 1995 by this court. I understand. IRA-IRA, which was the Immigration Reforms, came out in 1996, which put in time limits. And then after that, there was a series of litigation that worked up to the circuit court levels, and then the Supreme Court eventually decided DADA, which not only recognized that those time limits, which had been changed by IRA-IRA, were mandatory, but they also foresaw the new voluntary departure regulations, which came into effect a few months later. Yes, but all those do is say there's a quid pro quo. I understand there is a logic to waiting it out and then see what the package is, but I'm trying to understand how this panel can overrule, basically, binding precedent of this court, because I'm not sure you're saying that the scope of the remand is somehow different from what it was when Castrillon was decided. I don't know what the time limits have to do with anything. Well, first, I think that we do believe that things have changed since Castrillon, including which is the IRA-IRA, DADA, then the regulations. But this court has a decision, which we pointed out in our jurisdictional brief, which is U.S. v. Easterday, which says the in-bank review is not required to overturn a panel decision. I understand. We understand what the rubric is, but what's the basis? We have to have a basis, and I'm searching in your answer. You talk about time limits. What has that got to do with the scope of what's before the IJ on a remand for voluntary departure from the VIA? How is that different from what was confronting what it was when Castrillon was decided in 1995? What have the time limits got to do with it, for example? Well, I think the first part is when this court could remand. This court under Castrillon could remand because at the time there weren't time limits, and a petition for review could coexist at the time of Castrillon and Garcia with a request for voluntary departure. Now that the new regulations have taken effect, they automatically terminate a petition for review once – or they automatically terminate a voluntary departure grant once an individual files a petition for review. That's the posture of this case. He cannot have voluntary departure now because he has a petition for review. That's what's so curious about the timing of this is that if the petition for voluntary – the request for voluntary departure is terminated upon the filing, that means that it was terminated upon his filing, which was in what, 2006 or 2007? Right. I thought that these regulations were only prospective. Well – Right on that, or are they retrospective? Well, the regulations actually affect a voluntary departure grant. The regulations don't affect the jurisdiction of this court, and they don't affect the petition for review. So when you look at a linear manner, they go towards his voluntary departure. So his voluntary departure is still pending with the immigration judge. Do the regulations state whether they were prospective or retroactive? The regulations do state whether they're prospective, and they go towards – And what do they say? The exact date. They go towards cases – voluntary departure grants that happen after January 20, 2009. Okay. So any voluntary departure that the agency grants after January 20, 2009 are subject to the new voluntary departure regulations. How does the – if he's already filed his petition for review, then where's the voluntary departure? If that terminated at that point, what's before the IJ anymore? Well, and the voluntary departure – that's very true. It creates the situation where he is probably terminated from voluntary departure as long as this petition for review remains pending. That's the problem, though, in that that's a due process issue. He's not had the opportunity to go forward with his voluntary departure request because this petition for review remains pending. They can't coexist, and that's where the – But under the way – the way the regulation operates, as I understand it, is that if you are granted a voluntary departure by the IJ and you then seek review from the BIA and that's denied and you then file a petition for review, then you lose your voluntary departure. But those are simultaneous acts here. And Castrejon allows a sequencing which now has a three-year gap in there. At the time he files that petition for review, he has no way of anticipating DADA or the Attorney General's regulation. He's filed a petition for review, and if you're right, then the IJ should have dismissed this hearing a long time ago. Well, and that's the issue is that – that's exactly the issue. The IJ could have dismissed it, but at the same time it's not fair to him to not allow him to have the opportunity to go forward with voluntary departure. I mean, voluntary departure is a very real relief. It has very substantive – it has very substantive benefits that he should be allowed to have. If this Court decides to proceed with jurisdiction in this case, he's basically pretermitted from ever having voluntary departure, even though he could have possibly qualified for it. How do you – how do you say that? I think the point that's been made over and over again is when the petition for review predates the regulation date, then how can the regulation have an effect on that? And the fact that he has some potential for voluntary departure as a second part of that doesn't affect the notion that he wants to win here. He wants to win now. And voluntary departure is always a fallback. Right. A voluntary departure can't be a fallback for him now because he's never actually qualified for it. So the immigration judge has to make a determination regarding his voluntary departure. But it can't coexist with this petition for review. So what we're asking is for this Court to dismiss his – Why can't it coexist? Because the regulation – the problem is the regulation goes towards his grant of voluntary departure. It doesn't foresee the situation that happened here. So – You're assuming an inclusion that it can't go forward. Well, and the problem is the immigration judge is a perfect example, has been waiting, because they don't know what to do. And if you're looking at the situation, they're looking at the regulation, and they're saying, I can't go forward with voluntary departure because there's a petition for review pending. And a petition for review automatically terminates his voluntary departure. Only under the new regulation. Right. Okay, so we could decide to – there's a final order of removal per our existing precedent that applied at the time the petition for review was filed, and there was no regulation that would put a penalty on his having done that. We could then either grant the petition on the merits, or we could deny it, and then it would go back to the DIA. And then arguably, it could not be applied retroactively. He could not have been forced into this retroactive penalty, in his case because of the very due process concerns that he raised. So in his case, he would still have the opportunity for voluntary departure. Now, on a going forward basis with other petitioners in the future, then the situation that you contend for may well be true, but it's not. I'm unwilling to accept or reject at this point the notion that we – the status of things that we should form our decision in this case about the effect of these regulations based on the posture of this case. Well, Your Honor, I think we would encourage the Court to go forward as the First Circuit in Hakeem. I do understand what the time is. I want to ask you that because in the First Circuit, apparently they don't have the rule of final order that we do because they just simply said we dismiss this without prejudice. You know, they basically said, as I understand it, we weren't going to decide this. You may still have the right in this appeal, this petition, but we're going to dismiss it without prejudice. Your Honor, I think that – I don't know. What would you have us do? I think we would have the Court go forward very similar to Hakeem did, but I think that a published decision on this or some kind of guidance from this Court – What would be our order? I think the order would be that there's no final order of removal where the Board remands for voluntary departure, and that voluntary departure decision is subject to the new regulations. And that if he then doesn't get voluntary departure, then he can petition for review of both the underlying merits of the removal order, and, of course, he can't appeal a discretionary. But he would then appeal from the denial of voluntary departure if he wanted to, and forgo voluntary – I'm sorry. If he gets voluntary departure, then he has put to the choice as to whether or not he then wants to petition for review. And if he does that, then he forfeits voluntary departure. And we think that's – Or he can – can he also accept voluntary departure, but then he can then pursue his petition from outside the United States? And we believe the government believes that's the cleaner result, because if this goes back – if this Court were to dismiss without prejudice and it were to then go back to the immigration judge, the immigration judge would be allowed to determine voluntary departure and whatever other issues he determines to raise on remand to the immigration judge. The immigration judge could grant him cancellation of removal. The immigration judge could grant or deny voluntary departure. But whatever happens, it sweeps those proceedings up together and you have one petition for review that lands in this Court. And I think that's what the Supreme Court was saying in Fozzi is that these issues need to be swept up together for the purposes of judicial economy, for the purposes of streamlining one petition for review from all issues that he raises. I do – I notice my time has expired, but I would like to address one point regarding retroactivity. I believe that's an important point for this Court, and I think that the regulations as they apply to his voluntary departure request right now would not be retroactive, because his request for voluntary departure remains pending. It would be granted or denied underneath the new regulations. So I think regardless of the fact that the Board's decision was made many years ago, his voluntary departure decision by the agency has not yet been made. Okay. Thank you. Thank you. Thank you, Your Honor. Your Honor, regarding perspective versus retrospective, my client did not get notice that if he filed for petition for review that he would lose his eligibility for voluntary departure. And as I understand the government, you know,  as I understand it, what they're asking us to do is to dismiss without prejudice or however we frame it. It goes – and then you would then proceed with your October 21st hearing and get a result in that. And then at that point, you could either decide based on the result of the IJ hearing, you could then either petition for review, renew your petition for review to us, or you could accept voluntary. In other words, you could make the decision that DADA does talk about, about the quid pro quo. Yes, Your Honor. But the problem with that is if he decides to file a petition for review from the new decision now, he would lose that voluntary departure. Whereas in this case right now, that's probably one of the reasons why the immigration judge continued was to see what the decision of the Ninth Circuit was, so that if it was a negative decision, if it was dismissed, that the judge will allow him for voluntary departure. Well, you always – I thought you said you had a pending motion for some sort of affirmative relief. Which just came out, Your Honor, yes. Well, the point there is it's not just a voluntary departure decision. There's also another decision pending which could result in a substantive ruling which you could then file. Then you'd have to – then you'd be in a quandary. Right. But, again, so therefore we're just – basically on this decision, we're talking about whether there was a final order. There was a final board order regarding his asylum. That is the whole main issue, that there was a final order regarding his political asylum application. Just like in Custer Hill, there was a final order regarding the suspension of deportation. And at that time, voluntary departure did coexist with the main relief. And, therefore, I'm requesting that this case be judged with Pasquarello. Voluntary departure, whether it's before the immigration judge or not, should not make a difference, Your Honor. And that – we can't lose sight that there was a final board decision. And if we're going to use 2009 as – 2000 new regulations, I agree we could use it prospectively, but not on this case where he was never given notice regarding what he was giving up. Okay. Thank you, Your Honor. Thank you. All right. We appreciate the argument. Then I guess we'll get another taste of it in the next case, which is the Bood v. Holden.
judges: Shea, Fisher, Bybee